Jo Anna Schmidt, (MD, DC)
Michael L. Dailey (MD, DC, FL)
Kevin E. O'Neill (MD, DC)
Danielle E. Marone, CMSP (MD, DC)

300 East Lombard Street, Suite 1440
Baltimore, MD 21202
phone: 410-783-1296
direct dial: 410-783-1461
facsimile: 410-783-1316
email: jschmidt@sdolaw.com



# SCHMIDT, DAILEY, & O'NEILL, L.L.C.
## ATTORNEYS AT LAW

October 26, 2017

**_VIA CERTIFIED MAIL –_**
**_RETURN RECEIPT REQUESTED_**

Mr. David Ralph
Interim City Solicitor
Baltimore City Law Department
100 N. Holliday Street, Suite 101
Baltimore, MD 21202

Certified Article Number
9414 7266 9904 2081 7399 28
SENDERS RECORD

Nancy K. Kopp, Treasurer
c/o Insurance Division
Louis L. Goldstein Treasury Building
80 Calvert Street, Room 400
Annapolis, MD 21401

Certified Article Number
9414 7266 9904 2081 7399 35
SENDERS RECORD

## NOTICE OF CLAIM – INTENT TO SUE

Re:   Claimant:   Officer Jeffry E. Taylor Seq. # G-787
3931 Glenhurst Road, Dundalk, Maryland 21222
Baltimore City Police Department, S.O.S. Marine Unit

Tortfeasors:   State of Maryland;
Kevin Davis, as Police Commissioner of the Baltimore Police Department;
Sergeant Kurt Roepcke, Baltimore Police Department; and the Baltimore Police Department

D/Loss:   November 2016 and present & continuing

Dear Sirs/Madam:

Please accept this letter as written notice of claims that my client, Officer Jeffry E. Taylor, (Officer Taylor) intends to file against the State of Maryland, the Baltimore Police Department (BPD), Kevin Davis, as Police Commissioner of the Baltimore Police Department, and Sergeant Kurt Roepcke (Sgt. Roepcke). Officer Taylor has been subjected to illegal

retaliation by supervising members of the S.O.S. Marine Unit because he reported serious violations of departmental policy, procedures and rules related to Sgt. Roepcke's decision to use Baltimore City Police Department personnel and equipment to "remove" the *Danger Zone*, an allegedly abandoned boat that was legally anchored in a public docking area. The actions taken against Officer Taylor were in retaliation for his protected activities, constitute a wrongful employment/labor practice, and are in violation of his First Amendment Rights, 42 U.S.C. § 1983, Article 40 of the Maryland's Declaration of Rights, and the Law Enforcement Officers' Bill of Rights, Md. Code Ann., Public Safety §§ 3-101 *et seq.*

By way of background, Officer Taylor was hired by the BPD on October 23, 2000. Since May 2015, he has been assigned to the Marine Unit. In addition to Officer Taylor, the Marine Unit is comprised of seven (7) officers.[1] Officer Taylor is the 4th senior officer in the unit. The highest ranking officer is Sgt. Roepcke, who reports to Lieutenant George Hauf ("Lt. Hauf). Lt. Hauf's chain of command is Captain Charles "Chuck" Thompson (Cpt. Thompson), followed by Major Milton Corbett (Maj. Corbett), and Colonel Melissa Hyatt (Col. Hyatt). Lt. Hauf is located off-site at the Aviation Unit; therefore, Sgt. Roepcke has day-to-day oversight and supervision over the Marine Unit.

### I. Officer Taylor is a Whistleblower under Policy 1729 and has Spoken Out on a Matter of Public Concern.

#### A. The *Danger Zone* Incident.

In or about November 2016, the Marine Unit, including Officer Taylor, was ordered to start a "salvage operation" for the *Danger Zone*. A resident in the Tidewater Apartments who was an acquaintance of Col. Hyatt complained about the *Danger Zone* being an "eyesore." As a result, Col. Hyatt instructed Sgt. Roepcke to have the boat removed, despite the fact that the boat was not illegally moored or anchored.

On the first day that the Marine Unit responded to the *Danger Zone*'s location, it was low tide and the boat was sitting atop pilings. Officer Taylor sought out Sgt. Roepcke and advised that the BPD should not be handling the matter because it was not the job of the BPD to engage in "salvage operations" for boats that did not pose a health or safety risk to the boating public. Officer Taylor suggested that they call a tow boat and/or salvage company because the BPD could also be liable if something occurred during the operation. Officer Taylor further advised Sgt. Roepcke that the boat was not illegally moored or anchored and that the boat owner had never been issued a citation or enforcement order to move. Officer Taylor reported to Sgt. Roepcke that the salvage operation was outside of his authority and the Marine Unit. Despite Officer Taylor's arguments and concerns, Sgt. Roepcke ordered the Marine Unit to begin salvage operations. Officer Taylor told Sgt. Roepcke that he would not participate in illegal activity or actions outside of the authority of the BPD and, therefore, refused to participate in the *Danger Zone* salvage and subsequent recovery efforts unless ordered to do so.

---

[1] Officer Chris Gesla, Officer Rob Cortina, Officer Brian Wassum, Officer Josh Fidler, Officer Garrett Miller and Sgt. Roepcke.

Case 1:18-cv-03999-RDB   Document 1-1   Filed 12/28/18   Page 3 of 12
Re: Notice of Claim for Officer Jeffry Taylor
October 26, 2017
Page **3** of **12**

During the Marine Unit's initial efforts to remove the *Danger Zone*, they damaged the boat, impaling it on a piling, causing oil, gas, and/or other dangerous liquids to contaminate the Baltimore Harbor. Sgt. Roepcke failed to notify the National Response Center or the U.S. Coast Guard of the oil spill in violation of federal law. He also used a solid boom that did *not* contain the spill that continued to contaminate the harbor.[2] He also failed to contact a salvage company to assume control of this dangerous situation. Instead, Sgt. Roepcke continued to use BPD personnel and resources over the course of several months to attempt to remedy the situation and salvage the boat. These efforts included having the BPD pay overtime to members of the Dive Unit to attempt remediation. When those efforts were unsuccessful, Sgt. Roepcke brought in employees from KB Diver Services, a private organization, to consult on the best method to remove the *Danger Zone* from the piling. Sgt. Roepcke allowed KB Diver Service employees to use BPD boats without first obtaining a waiver/release or approval from Lt. Hauf, Cpt. Thompson, or Maj. Corbett.

### B. Officer Taylor Reports His Concerns About the *Danger Zone* to Lt. Hauf and Maj. Corbett.

On January 19, 2017, Officer Taylor spoke with Lt. Hauf and several people on the Dive Squad about the *Danger Zone* operations. He advised Lt. Hauf that he had contacted some salvage and tow companies that would remove the *Danger Zone*, possibly at no cost to Baltimore City.

On January 30, 2017, Officer Taylor was approached by some citizens who expressed dissatisfaction with the way the *Danger Zone* salvage was being handled. They also were upset about the oil and gas spills. They provided Officer Taylor with photographs and a video. Officer Taylor passed the information along to Sgt. Roepcke and reminded him that he could contact a salvage company.

On February 2, 2017, Officer Taylor sent an e-mail to Maj. Corbett to inform him about the situation and his concerns with the *Danger Zone* salvage operations. He wrote the following:[3]

> I know you are very busy but I wanted to inform you of a situation and concerns of the boat Danger Zone. Several citizens have been expressing concern of the hazards and environmental issues being caused by the actions of the dive team. A group of bystanders have been taking photos and made the below slide show and the e-mail they sent to me is attached below and they sent it to me two times now.

---

[2] In fact, the boom later broke.
[3] Attachment A.

> I know there are programs that remove abandoned vessels and I was told at no cost to the city. I will get you more information and if there is any way I can help or answer any questions, I will always be available for you.

The citizens complained that they "d[idn't] understand why recovering an unmanned boat was a Police function that involved 12 officers, 2 boats and a helicopter. They worked on it for 4 days and as you can see they were unsuccessful."[4]

On February 3, 2017, Maj. Corbett responded and acknowledged that "WE" have been getting several complaints about the boat, but he was being told something "completely different" about removing the boat.[5] He requested that Officer Taylor provide information from the salvage companies.[6]

On February 8, 2017, Officer Taylor provided Maj. Corbett with information he received from the Maryland Department of Natural Resources about abandoned vessels in the State of Maryland.[7]

On February 9, 2017, Officer Taylor followed up and explained that he had contacts for the Abandoned Boat and Debris Program and was told that there would no cost to the city.[8] He also informed Maj. Corbett that "[f]rom the beginning of this situation I voiced my opinion…and done extensive research and was guided on how to handle the removal of the boat and cleanup of hazard/waist *(sic)* material spillage."[9] Later that day, Officer Taylor sent a text message to Maj. Corbett, stating:[10]

> Sir I just sent you a reply to the email I hope it helps and you know you can always call me.
>
> Because I'm in touch with the community I know how irate they are getting with this situation.
>
> Only because I feel loyal to you I felt I had to advise you of the situation.

---

[4] Attachment A.
[5] Attachment A.
[6] Attachment A.
[7] Attachment B.
[8] Attachment C.
[9] Attachment C.
[10] Attachment D.

On February 13, 2017, Officer Taylor again sent an e-mail to Maj. Corbett to follow-up on the Abandoned Boat Program.[11] He reported that Sgt. Roepcke and Lt. Hauf were detailing him on February 27, 2017.[12]

## II. Retaliatory Acts Taken Against Officer Taylor in Response to his Whistleblowing Activity.

### A. Sgt. Roepcke and other Officers in the Marine Unit call him a Rat/Snitch and he is Ostracized and Harassed.

Almost immediately after protesting Sgt. Roepcke's actions, Officer Taylor was ostracized, threatened, teased, and subjected to severe and pervasive harassment and retaliation.

On December 9, 2016, while Officer Taylor was in the Marine Unit office, he overheard Sgt. Roepcke and Officers, Cortina, Miller and Wassum discussing him. Officer Taylor heard Sgt. Roepcke and Officer Wassum state that they did not want to work with him and that he was a "rat/snitch." They continued to discuss Officer Taylor in this manner for over 10 minutes, until Officer Miller saw him in the office and went into the room to report that he was listening. After the officers left, Officer Taylor confronted Sgt. Roepcke and told him that it was unprofessional to have such conversations about him. Officer Taylor asked Sgt. Roepcke to schedule a meeting with command to resolve the situation, but no meeting was held.

On January 24, 2017, while Officer Taylor was working with Officer Gesla, he asked Officer Taylor if he knew why Sgt. Roepcke was having a meeting with Maj. Corbett. Officer Taylor advised him that he did not know what the meeting was about. In response, Officer Gesla said "sure you do, you go downtown to tell them everything." He also told Officer Taylor that he might not want to say anything to anybody about what goes on at the Marine Unit because he "could be transferred back to patrol, like they did to Sgt. Atwood."

On February 23, 2017, Officer Taylor was helping Officer Gesla with the *Frontier* (one of the BPD police boats) and noticed that whoever had performed winterization activities had not removed the drain plugs or secured the trailer properly. Officer Gesla called him a snitch and remarked that he was going to run and tell Cpt. Thompson.

On April 21, 2017, Sgt. Fred Gilbart told Officer Taylor that Sgt. Roepcke said *he* (Officer Taylor) needed to "stop making grievances of everything and stop mentioning things going wrong."

Sgt. Roepcke also engaged in harassing behavior. On July 14, 2017, he sent Officer Taylor an e-mail, stating that he had painted a boat with the "wrong paint."[13] Sgt. Roepcke then

---

[11] Attachment C.
[12] Attachment C.
[13] Sgt. Roepcke never even contacted Officer Taylor to find out what paint he used. Moreover, he never instructed Officer Taylor on what paint to use for the project.

Case 1:18-cv-03999-RDB Document 1-1 Filed 12/28/18 Page 6 of 12
Re: Notice of Claim for Officer Jeffry Taylor
October 26, 2017
Page 6 of 12

*posted* the e-mail on the office wall for everyone in the Marine Unit to see. He also publicized the e-mail to officers within and outside of the Marine Unit. By way of contrast, Officer Cortina *crashed and wrecked* the lower unit and *The Ram* trailer, and Officer Wassum damaged *The Ram*. In addition, Officer Wassum used the BPD gas card at Bass Pro for non-approved items, causing the card to be deactivated. Officer Taylor had to get the card re-activated because Officers Gesla and Trawinski filled up a BPD boat and, when they tried to pay using the BPD gas card, the card was declined. These officers' "bad acts" were not posted on the wall or publicized to other members of the Marine Unit.[14]

On May 15, 2017, Officer Taylor's shoes and boots were stolen out of his work locker. Apparently, several members of the Bomb Squad and ESU had a party at the Marine Unit's building. Officer Taylor reported the theft to Sgt. Roepcke but Sgt. Roepcke did not investigate the matter or take any action.

On July 31, 2017, Officer Taylor was working when Sgt. Roepcke came into the office, saw him, and immediately left the room. During the shift, while Officer Taylor was in the building, he made several attempts to speak with Sgt. Roepcke; however, the Sergeant just ignored him and left the room each time. Sgt. Roepcke continues to ostracize Officer Taylor by failing to check in with him during his shifts and avoiding him.

Sgt. Roepcke has also isolated Officer Taylor from activities and events that other members of the Marine Unit are allowed to participate in. By way of example, on August 24, 2017, Officer Taylor was patrolling the harbor at the West Wall and noticed that there was a christening of an Army Corps of Engineers vessel occurring. Officer Cortina from the Marine Unit was present. Officer Taylor was not made aware of this event and not asked to participate in the event.

### B. Officer Taylor is Detailed to Personnel for Two (2) Months and Denied Overtime Opportunities.

In retaliation for complaining about the *Danger Zone*, on **February 9, 2017**, Sgt. Roepcke advised Officer Taylor that he was being detailed to work at Personnel Background Investigations for two (2) months. Officer Taylor protested, stating that the detail needed to be assigned to the Marine Unit member with the *least seniority* per the MOU, which meant that Officer Miller should have been assigned the detail. When Officer Taylor continued to complain about the detail, other officers told him that Sgt. Roepcke was going to try and get him to be permanently transferred out of the Marine Unit. Fearing further retaliation, Officer Taylor accepted the detail.

On February 14, 2017, Officer Taylor spoke with Maj. Corbett in reference to the *Danger Zone* and being detailed to Personnel. Maj. Corbett told Officer Taylor that Officer Miller had not been sent on the detail (even though he had less seniority) because it would "look like punishment for the Freddie Gray incident." This justification is pretextual because Officer

---

[14] Incidentally, Sgt. Roepcke has not completed required damage reports on the damaged equipment.

Case 1:18-cv-03999-RDB   Document 1-1   Filed 12/28/18   Page 7 of 12
Re: Notice of Claim for Officer Jeffry Taylor
October 26, 2017
Page 7 of 12

Nero (also involved in the Freddie Gray incident) was detailed from Aviation where he was assigned following his return to work.

During the detail (February 27, 2017 through April 2017), Officer Taylor was not afforded the same opportunity to work overtime that was offered to members of the Marine Unit. The detail and the failure to offer him overtime changed the terms and conditions of his employment and was in retaliation over Officer Taylor's whistleblowing activities related to the *Danger Zone*.

Officer Taylor has continued to be denied overtime opportunities that Sgt. Roepcke makes available to other members of the Marine Unit:

- On July 2, 2017, Sgt. Roepcke gave new Officer Fidler (less seniority) and Officer Cortina overtime work that was not offered to Officer Taylor.

- On August 1, 2017, Officer Taylor noticed that they were short on manpower for August 9th through August 11. He e-mailed Sgt. Roepcke and later tried to talk with him and offered to work overtime. Sgt. Roepcke was reluctant to acknowledge Officer Taylor's initiative, the manpower shortage, and did not offer him overtime.

- Sgt. Roepcke routinely has one officer in the Marine Unit working alone, which is against policy, in order to accommodate other officers. He does not offer Officer Taylor overtime to fill the lack of manpower.

- On August 13, 2017, Officer Taylor was advised by several officers in the Marine Unit dive team and ESU that Sgt. Roepcke was offering overtime to officers to work the Central District in the 10 to 7 post and had made such an offer to Officer Mealey and several others. Sgt. Roepcke never offered the overtime to Officer Taylor.

- On September 7, 2017, Sgt. Roepcke offered other officers overtime for the 1st Thursday Concert but did not make the same offer to Officer Taylor. On this same day, Officer Miller changed his shift to work overtime with Sgt. Roepcke, which is a violation of Lt. Hauf's written policies that no one may change the schedule for overtime.

**C. Officer Taylor is Excluded and Denied Training Opportunities and Work Assignments Offered to Other Members of the Marine Unit.**

Almost immediately after speaking out about his concerns over the *Danger Zone* salvage and cleanup operations, Officer Taylor was subjected to retaliation in the terms and conditions of

his employment. Specifically, he was denied training opportunities and work assignments offered to other members of the Marine Unit:[15]

- On February 22, 2017, Offer Taylor was not notified of, or included in, training that was offered by the Coast Guard. The training was offered to Lt. Hauf, Sgt. Roepcke, and Officers Miller and Cortina. During this time, Officer Miller was supposed to be assigned to administrative duties *only* and should never have been offered such training.

- On May 10, 2017, Officer Taylor was specifically excluded from training in Annapolis with the Coast Guard. The training was offered to Sgt. Roepcke and other members of the Marine Unit.

- On May 17, 2017 and May 18, 2017, Officer Taylor was specifically excluded from training in Annapolis with the Coast Guard. The training was offered to Sgt. Roepcke and other members of the Marine Unit.

- On June 1, 2017, when Officer Taylor reported for work, he observed that Sgt. Roepcke (who had changed his hours from night to day work) and Officer Miller (who was marked on "vacation" in the book) were at work and training with the FBI's boat squad. Officer Taylor complained to Sgt. Roepcke that it was unfair that he was being excluded from training.

- On July 24, 2017, Officer Miller, who is *not* a certified diver, was offered to come into work and assist the dive team in recovering a shotgun thrown into the water in Baltimore County.

- On August 23, 2017, Officer Taylor was working and was told by other members of the Marine Unit and ESU that there was an incident of bicycles being recovered from the harbor by other members of the Marine Unit and dive team. Officer Garrett was assigned to the incident, even though he is *not* a certified diver and a junior member of the Marine Unit. Officer Taylor was not notified of the incident or called in to respond.

- On September 7, 2017, Officer Miller participated in water-testing the surface suit, even though he is not a certified diver and has less seniority in the Marine Unit than Officer Taylor.

---

[15] Officer Taylor has a Maryland Boaters Safety Card and is a certified SCUBA diver. Only a few members on the Marine Unit have a Boaters Safety Card. Sgt. Roepcke allows employees from the Marine Unit and Dive Team who do **not** have the Boaters Safety Card to pilot the BPD boats in violation of Maryland law.

Case 1:18-cv-03999-RDB   Document 1-1   Filed 12/28/18   Page 9 of 12
Re: Notice of Claim for Officer Jeffry Taylor
October 26, 2017
Page 9 of 12

### D. Officer Taylor's Schedule is Changed Often, Without Notice, and In Favor of Employees with *Less* Seniority.

On April 27, 2017, when Officer Taylor was scheduled to return to the Marine Unit, Sgt. Roepcke changed his schedule so that other members of the Marine Unit (including those with less seniority) were accommodated. Sgt. Roepcke treated Officer Taylor's schedule requests differently and would not offer him accommodations. For instance, on May 4, 2017, Sgt. Roepcke offered overtime to Officer Wassum, a junior member of the Marine Unit, for the First Thursday concert before offering the same position to Officer Taylor. In addition, on July 20, 2017, Sgt. Roepcke adjusted the roll book to accommodate his dive trainings and Officer Miller for day work, in lieu of his night work schedule.

In addition, Sgt. Roepcke would change Officer Taylor's schedule without giving proper notice and would deny him overtime opportunities:

- On June 9, 2017, Sgt. Roepcke texted Officer Taylor and told him that his hours were going to be changed the next day in order to give a junior officer a scheduling preference.

- On June 11, 2017, Sgt. Roepcke changed his schedule again to accommodate Officers Cortina and Fidler and did *not* notify Officer Taylor of the change.

- On July 2, 2017, Sgt. Roepcke scheduled Officers Fidler and Cortina for overtime, but did not offer the same opportunity to Officer Taylor, even though he had seniority over Fidler.

- On July 20, 2017, Sgt. Roepcke changed Officer Taylor's schedule to accommodate Officer Fidler who had less seniority. Sgt. Roepcke tried to justify his actions by saying that the officer had wanted to do some night work, which Officer Taylor told him was untrue. After Officer Taylor pointed out Sgt. Roepcke's lie, he restored Officer Taylor's hours for July 31, 2017 and August 1, 2017.

- On September 17, 2017, Officer Taylor learned that his regularly scheduled shift of 0700-1500 was changed to 1500-2300 for September 20, 2017 through September 22, 2017. Officer Taylor told Sgt. Roepcke that the change violated the MOU because it was made to accommodate another officer with less seniority. Sgt. Roepcke ignored his concerns and told him to "take it up with Officer Wassum" and left the room. Ironically, when Officer Taylor reported for his shift on September 20, 2017, Officers Cortina, Fidler and Miller had completed a day work shift and Officer Miller was also working 1500-2300 as well. Officer Taylor was not offered to work overtime and, instead, Sgt. Roepcke gave overtime to Officer Miller so he could work on a

Case 1:18-cv-03999-RDB Document 1-1 Filed 12/28/18 Page 10 of 12
Re: Notice of Claim for Officer Jeffry Taylor
October 26, 2017
Page 10 of 12

dive training day, despite the fact that he is not a certified diver. Moreover, this action violated MOU Unit 1, Art. 11, § C (2).

- On September 21, 2017, Officer Miller was offered overtime to work a double shift (again). No overtime was offered to Officer Taylor.

Most recently, on October 21, 2017, when Officer Taylor woke up, he checked his cell phone and saw that at 5:30 a.m. Sgt. Roepcke had called and left a message, saying that he was supposed to be working the 5:00 a.m. to 1:00 a.m. shift for the Baltimore Marathon. Officer Taylor called Sgt. Roepcke and asked when his shift had changed. Sgt. Roepcke told him "last Friday." Officer Taylor told him that was not, and could not, be true because he had a copy of the schedule. Later that day, Officer Gesla advised Officer Taylor that *he* was told of the shift change for the Baltimore Marathon two (2) weeks prior. This incident is typical of Sgt. Roepcke's continuing pattern of retaliation and harassment against Officer Taylor by changing his work shifts with no (or insufficient) notice.

### E. May 2017 - Officer Taylor is Disciplined by Sgt. Roepcke over an Alleged Incident in 2016.

On May 30, 2017, Officer Taylor received an oral counseling from Sgt. Roepcke in reference to complaints with a boat stop with the MDTA that occurred *in 2016*. In addition, he was placed in an "Early Intervention Program." Officer Taylor told Sgt. Roepcke and Sgt. Ames (who was on speakerphone) that the oral counseling was in retaliation and the allegations were made without any due process.

### F. July 2017 - Officer Taylor Receives a Green Sheet in Retaliation over the *Danger Zone*.

On July 4, 2017, Officer Taylor was given a Green Sheet by Sgt. Roepcke, in which the Sergeant noted that he "needed improvement" in handling citizens and "needed improvement" in taking initiative.[16] Sgt. Roepcke's evaluation was retaliatory for Officer Taylor's actions in complaining about the *Danger Zone*. In response, Officer Taylor attached his statement.[17]

On July 11, 2017, Lt. Hauf met with Officer Taylor and gave him *another* Green Sheet dated July 12, 2017.[18] Apparently recognizing that Sgt. Roepcke's Green Sheet was biased, Lt. Hauf told Officer Taylor that he wanted it to reflect some positives and elaborated where Officer Taylor needed improvement. Officer Taylor told him that he had taken lots of initiatives and that citizens had complimented him on his day-to-day duties and during his interactions with them. His initiatives included, but is not limited to, creating a daily sign-in

---

[16] Attachment E.
[17] Attachment E.
[18] Attachment F.

Case 1:18-cv-03999-RDB   Document 1-1   Filed 12/28/18   Page 11 of 12
Re: Notice of Claim for Officer Jeffry Taylor
October 26, 2017
Page 11 of 12

sheet for the Marine Unit, which Sgt. Roepcke refused to implement, maintaining radar certification for use on the water, volunteer community activities.

Officer Taylor reported to Lt. Hauf that Sgt. Roepcke's Green Sheet was in retaliation for his complaints about the *Danger Zone*. He also told him how Sgt. Roepcke was dividing him from the rest of the Marine Unit. Officer Taylor provided additional examples of how Sgt. Roepcke was violating Departmental Policy; specifically:

- Sgt. Roepcke was giving overtime and comp time to officers working the night shift when they were put on 12-hours shifts that they did not work.

- Sgt. Roepcke was using BPD manpower and funds with regard to the *Danger Zone*.

- Sgt. Roepcke purchased a used, underwater chainsaw from one of his friends, instead of using the City bidding process.

- St. Roepcke was using BPD officers to work on the *Dauntless*, Marine Unit vessel, to conceal the fact that the motors had been damaged during the *Danger Zone* salvage operations.

Officer Taylor also told Lt. Hauf that Sgt. Roepcke marked him as "Average" on the Green Sheet and treated him differently because other members of the Marine Unit have engaged in more egregious actions. He reported to Lt. Hauf the following acts or omissions committed by other officers, namely:

- An officer that crashed the *Ram* into the trash boat, causing damage to the front passenger side cross bar windshield;

- Sgt. Roepcke and Officer Cortina wrecked the boat trailer for the *Ram*, which still had not been fixed or reported as damaged.

- Several group meetings for Officers Wassum and Miller because they were yelling at each other on calls in front of citizens.

Rather than taking any action against Sgt. Roepcke or the other officers, Lt. Hauf suggested that Officer Taylor document his improvements on his next Green Sheet.

### III.   Sgt. Roepcke and other Members of the Marine Unit have violated Policy 1729.

Baltimore Policy 1729 strictly prohibits purposeful retaliation against or interference with a member who reports violations of law and/or Department policy, procedures and rules. Retaliatory conduct includes *inter alia,* deliberate, purposeful actions or failures to act that negatively affect another member's terms or conditions of employment. Such adverse actions

Re: Notice of Claim for Officer Jeffry Taylor
October 26, 2017
Page 12 of 12

take many forms, including bullying, threats, intimidation, isolating, ostracizing, or acts that malign or disparage an individual's reputation.

In this case, Officer Taylor reported violations of Departmental Policy related to Sgt. Roepcke's decision to move and salvage the *Danger Zone* using BPD manpower and equipment. He brought these same concerns to Maj. Corbett, who acknowledged that he had also received complaints from concerned citizens about the BPD's involvement with the *Danger Zone*. After Officer Taylor voiced his concerns as both an employee and a concerned citizen on a matter of public concern, Sgt. Roepcke engaged in a pattern and practice of retaliating against him by detailing him for two (2) months, ostracizing him, creating friction with the other members of the Marine Unit, denying him training opportunities and assignments, orally disciplining him, placing him on an Early Intervention Plan, and preparing a biased Green Sheet. Officer Taylor has been called a rat, snitch, and threatened with a permanent transfer.

The acts detailed herein are merely illustrative of the actions taken by Sgt. Roepcke. Additional acts have occurred and continue to occur to Officer Taylor under Sgt. Roepcke's supervision. Moreover, Officer Taylor is aware of additional Department Policies that have been (and continue to be) violated by Sgt. Roepcke. It is clear the Marine Unit, which is largely overseen by only Sgt. Roepcke, is lacking oversight and accountability.

Sgt. Roepcke's actions have had an immediate impact on Officer Taylor's wages and work schedule and have caused him humiliation, embarrassment, stress, mental anguish and loss of enjoyment of life. Officer Taylor will be seeking economic and non-economic damages in an amount of no less than $400,000.00 (the cap), as well as punitive damages in the amount of $1,000,000.

Thank you for your attention to this matter. Should you have any questions or need additional information, please do not hesitate to contact me.

Very truly yours,

Jo Anna Schmidt

JAS:dem
Enclosures

cc: Officer Jeffry Taylor
Daniel Beck, Esquire
Director Vernon Herron